***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. Accordingly, the Full Commission affirms, with modifications, the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction of the parties and of the subject matter.
2. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
3. An employee-employer relationship existed between plaintiff and defendant-employer on plaintiff's date of injury, October 19, 2004.
4. Defendants do not deny that plaintiff suffered an incident on October 19, 2004; however, defendants deny that plaintiff's ongoing complaints are the result of the incident.
5. The parties are correctly captioned above.
6. The plaintiff's average weekly wage is $180.25, yielding a compensation rate of $120.17.
7. Documents stipulated into evidence include the following:
 (a) Stipulated Exhibit #1 — Pre-trial agreement, plaintiff's medical records, Industrial Commission forms; and
 (b) Stipulated Exhibit #2 — Employment and wage records from Manpower, Daughtridge Oil Co and Target.
8. Issues for decision include the following:
 a. Whether plaintiff has received all necessary and appropriate benefits?
 b. What additional benefits, if any, is plaintiff entitled to receive?
 c. Whether plaintiff's current complaints of back problems are causally related to the alleged injury of October 19, 2004? *Page 3 
 d. What is the nature and extent of any injury sustained by plaintiff on October 19, 2004, and to what extent, if any, is plaintiff entitled to additional benefits as a result of that incident?
 ***********
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 38 years old and had a twelfth grade education. She was employed as a cashier and deli worker with defendant-employer on October 19, 2004.
2. On October 19, 2004, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer in the form of a specific traumatic incident of the work assigned while cleaning chicken to be used for rotisserie cooking. Plaintiff went into the cooler and slipped on a puddle of water and chicken drippings and fell flat on her back, injuring her neck and back.
3. After she reported the injury to her employer, plaintiff sought treatment at Nash Urgent Care on October 19, 2004. Dr. Mullin at Nash Urgent Care prescribed Anaprox Soma, told her to use moist heat, and diagnosed her with lower back pain from a fall. Plaintiff was released from work for that day and put on light duty, including limited lifting, until October 27, 2004.
4. Plaintiff continued to have pain in her back, neck and shoulders so she again presented to Dr. Mullin on October 27, 2004, November 22, 2004, November 29, 2004, and February 9, 2005. *Page 4 
5. Dr. Mullin referred plaintiff to Nash General Hospital for physical therapy for her back. Although plaintiff attended therapy on at least two occasions, at the hearing before the Deputy Commissioner, she testified that the therapy increased her pain. Plaintiff further testified that, although some days are better than others, her back pain has never completely subsided.
6. Up until February 9, 2005, plaintiff had been treated conservatively at Nash Urgent Care with medication, steroid injections, and some physical therapy; however, it has been without relief.
7. On plaintiff's last visit with Dr. Mullin on February 9, 2005, he referred her for further treatment with Dr. Aurora Pajeau, a neurologist, at Boice-Willis Clinic in Rocky Mount.
8. On May 27, 2005, plaintiff presented to Dr. Pajeau, who diagnosed her with cervical spondylosis with trapezium muscle spasm, bilateral shoulder pain and low back pain. Dr. Pajeau also diagnosed occipital neuralgia, discovered during plaintiff's neurological examination, which he believed to be from the injury.
9. Dr. Pajeau recommended that plaintiff present for an MRI of her cervical spine. He also discussed use of a cervical pillow, prescribed a pain blocker, Tylenol Arthritis Pain and a sleeping pill to help block her pain. Dr. Pajeau wanted plaintiff to return after her MRI. He also referred plaintiff for aquatic physical therapy.
10. On July 26, 2006, Dr. Pajeau's assessment was 1) "The patient seems to have a cervical myelopathy. She has never had an MRI of the cervical spine, and I see that she has some abnormalities here, and pointing to perhaps a cord compression," and 2) "Trapezium spasm and occipital groove tenderness with occipital neuralgia." *Page 5 
11. Defendants did not authorize payment for the MRI, and plaintiff could not afford it on her own; therefore, she cancelled her appointment for the MRI and other office visits. As of the date of the hearing before the Deputy Commissioner, an MRI had not been performed.
12. At the hearing before the Deputy Commissioner, plaintiff testified that she continues to suffer back problems. Plaintiff further testified that the pain she experienced at the time of the injury by accident on October 19, 2004 has not subsided.
13. Dr. Pajeau opined, and the Full Commission finds, that plaintiff's physical complaints are consistent with someone who had injured herself in the manner which plaintiff had described and that plaintiff's current symptoms are not associated with any idiopathic or congenital condition.
14. Plaintiff's supervisor, Mr. Benjamin Smith, a co-manager and safety coordinator for defendant-employer testified at the hearing before the Deputy Commission that he had no reason to doubt plaintiff's credibility or honesty.
15. Plaintiff testified that she never had a workers' compensation claim or back problems prior to her work injury on October 19, 2004.
16. Medical treatment provided by Dr. Mullins, Dr. Pajeau and Nash Health Systems as well as an MRI and physical therapy is reasonably required to effect a cure, give relief of plaintiff's symptoms or lessen the period of disability related to her work-related injury.
17. At the hearing before the Deputy Commissioner, plaintiff testified that she had only missed three days of work due to her work injury when a doctor from the Nash Urgent Care had released her from work.
 *********** *Page 6 
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On October 19, 2004, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer in the form of a specific traumatic incident of the work assigned, resulting in injury to her neck and back. N.C. Gen. State § 97-2(6).
2. Plaintiff is entitled to all medical expenses incurred or to be incurred as a result of her compensable injury, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-19; 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay all medical compensation incurred and to be incurred as a result of plaintiff's injuries to her back, neck and shoulders, including but not limited to treatment and recommendations by Dr. Pajeau and performance of an MRI for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief or lessen plaintiff's period of disability. Dr. Pajeau is appointed as plaintiff's treating physician.
2. Defendants shall pay the costs of this action.
 This the __ day of November 2007. *Page 7 
S/______________________ PAMELA T. YOUNG CHAIR
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/______________________ DIANNE C. SELLERS COMMISSIONER